UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

M NORMAN HAMMERLORD,

Plaintiff,

v.

SECRETARY DOUG COLLINS et al.,

Defendants.

Case No.: 25-cv-00882-DMS-BJW

**ORDER SCREENING PLAINTIFF'S SECOND AMENDED COMPLAINT AND DENYING MOTION FOR APPOINTMENT OF COUNSEL**

On February 10, 2026, Plaintiff M Norman Hammerlord, proceeding *pro se*, filed a Second Amended Complaint ("SAC") against Defendants President Donald J. Trump, Secretary of Veterans Affairs Doug Collins, Veterans Affairs San Diego Healthcare System Director Frank Pearson, Dr. Ying Wu, and Dr. Jennifer M Javors. (Second Am. Compl. ("SAC"), ECF No. 11). Plaintiff alleges claims arising from medical care he receives through the Department of Veterans Affairs ("VA"). (*Id.* at 2). As Plaintiff is proceeding *in forma pauperis* ("*IFP*"), the Court is required to screen the SAC pursuant to 28 U.S.C. § 1915(e)(2). On August 3, 2026, Plaintiff filed a Motion for Appointment of Counsel. (Counsel Mot., ECF No. 13). For the following reasons, the Court *sua sponte* dismisses Plaintiff's SAC with limited leave to amend and denies the Motion for Appointment of Counsel.

## I. BACKGROUND

Plaintiff is an 81-year-old disabled veteran who receives medical care through the VA San Diego Healthcare System. (SAC 6–7). Plaintiff alleges that on July 31, 2024, he went to the VA La Jolla Emergency Room for shortness of breath and chest pain. (*Id.* at 8–9). Plaintiff alleges that he was diagnosed with dyspnea and told to schedule an appointment with his primary care physician as soon as possible. (*Id.*). Plaintiff alleges that he scheduled the soonest-available appointment for September 5, 2024, with his physician, Defendant Dr. Wu. (*Id.* at 9). At the appointment, Dr. Wu allegedly recommended CPAP therapy but Plaintiff informed her that he did not have sleep apnea based on a recent test. (*Id.*).[1] Plaintiff allegedly requested oxygen therapy but Dr. Wu declined, citing recent pulmonary testing that Plaintiff contends was flawed. (*Id.* at 9–10). "Plaintiff found this unacceptable, as he had previously been diagnosed with Emphysema, severe heart problems and a murmur all of which seemed a more logical source of his symptoms and issues." (*Id.* at 9–10). On October 25, 2024, Plaintiff alleges that he sent Dr. Wu and Director Pearson another written request for medical care, marking it as urgent, but never heard back from them. (*Id.* at 11). On October 30, 2024, Dr. Wu's manager allegedly sent Plaintiff a response, which Plaintiff refers to as "the cover-up letter." (*Id.* at 12). On November 6, 2024, Plaintiff allegedly sent a response to Dr. Wu and Director Pearson, once again requesting medical care and marking the matter as urgent. (*Id.* at 13).[2]

On December 17, 2024, Plaintiff contacted the VA hotline and was assigned a case number with an expected resolution date fourteen business days out. (*Id.* at 15). Plaintiff alleges that after not hearing back, he again called the VA hotline and was able to obtain an appointment for January 21, 2025. (*Id.*). At the appointment, Dr. Wu allegedly

---

[1] On September 11, 2024, Plaintiff sent Dr. Wu a written memorandum documenting the video appointment, which he quotes in the SAC. (*Id.* at 9). A copy was also sent to Defendant Director Pearson through the VA Patient's Advocate Office in La Jolla. (*Id.*).

[2] Plaintiff alleges that he attempted hand-delivery but was turned away, so instead sent the response by certified mail. (*Id.* at 14).

reaffirmed her decision not to go forward with oxygen therapy. (*Id.* at 16). On January 30, 2025, Plaintiff alleges he again contacted the VA hotline and was assigned a new case number, but never heard back. (*Id.*). That same day, Plaintiff alleges he sent a complaint and demand for damages to former VA Secretary Denis R. McDonough and Director Pearson. (*Id.*). On February 26, 2025, the VA Office of General Counsel sent a reply inviting Plaintiff "to submit his claim to the VA Torts Claim Group using Form SF-95 under the provisions of the Federal Torts Claims Act." (*Id.*). On March 10, 2025, Plaintiff alleges that he submitted a criminal complaint against Dr. Wu and Director Pearson "with the Commander of the San Diego VA Police in La Jolla." (*Id.* at 17). On March 12, 2025, Plaintiff allegedly filed a claim for medical malpractice using Form SF-95 as instructed by the VA Office of General Counsel. (*Id.*). That same day, Plaintiff filed a consumer complaint with the Medical Board of California against Dr. Wu. (*Id.* at 19). Plaintiff alleges that when he asked for Dr. Wu's license number to fill in the complaint form, Defendants refused to give it to him. (*Id.* at 19). On March 27, 2025, Plaintiff alleges that he received a response to the complaint characterizing Dr. Wu as a physician licensed in Florida and indicating the Board did not have jurisdiction over a physician licensed in another state. (*Id.*). On April 7, 2025, the VA Office of General Counsel allegedly sent an acknowledgement of receipt of Plaintiff's claim and stated they were allowed six months to consider the claim. (*Id.* at 20).

On April 14, 2025, Plaintiff filed the present action with a Motion to Proceed *IFP*. (ECF Nos. 1–2). On April 25, 2025, Plaintiff met with a newly assigned physician, Defendant Dr. Javors. (SAC 20). Plaintiff alleges that it was clear Dr. Javors had consulted with Dr. Wu on the issue and developed a predisposition towards the issue of oxygen therapy. (*Id.*). On April 29, 2025, Plaintiff was sent the results of his recent CT Chest Aortic Dissection. (*Id.* at 20–21). On May 21, 2025, Plaintiff allegedly sent a letter via certified mail to Dr. Javors documenting their initial visit, with a copy also sent to Director Pearson. (*Id.* at 21). The letter allegedly requested medical records, oxygen therapy, and a sooner appointment, but went unanswered. (*Id.*). On May 28, 2025, Plaintiff filed a

Declaration of Urgent Matter and Request to Expedite Ruling in this action. (ECF No. 3). On June 2, 2025, Plaintiff alleges that he met with Dr. Javors again and that his requests for documents, referrals, and oxygen therapy were denied. (SAC 21). On June 17, 2025, Plaintiff requested a referral to physical therapy or a back brace as a follow-up to Dr. Javors noting he had a curvature of the spine which was affecting Plaintiff's breathing. (*Id.* at 21–22). Plaintiff also requested a referral to cardiology, oxygen therapy, and the head and neck clinic. (*Id.*). On June 18, 2025, Plaintiff filed a Motion for Recusal. (ECF No. 4). On July 2, 2025, Plaintiff had another consultation with Dr. Javors in which she stated that she had responded to his written request although Plaintiff alleges he had not received a response. (SAC 22). On July 7, 2025, the Court granted Plaintiff's Motion to Proceed *IFP*, denied the Motion for Recusal, and dismissed the Complaint without prejudice for failing to state a claim upon which relief may be granted. (ECF No. 5). On July 14, 2025, Plaintiff sent Dr. Javors a request for documents via certified mail with a requested response date within ten days. (SAC 22).

On August 6, 2025, Plaintiff filed a First Amended Complaint. (ECF No. 7). On January 20, 2026, the Court dismissed the First Amended Complaint. (ECF No. 10). The Court dismissed Plaintiff's 42 U.S.C. § 1983, 42 U.S.C. § 1985, and elder abuse claims without leave to amend as Plaintiff had not cured the previously identified deficiencies. (*Id.* at 5). However, the Court gave Plaintiff leave to amend his Americans with Disabilities Act ("ADA") claims as he had cured the first element but still failed to plausibly allege the remaining elements. (*Id.* at 4–5). On February 10, 2026, Plaintiff filed the Second Amended Complaint currently before the Court. (SAC 1). On August 3, 2026, Plaintiff filed a Motion for Appointment of Counsel. (ECF No. 13). In the SAC, Plaintiff alleges an ADA claim, as well as a new claim under the Federal Torts Claims Act ("FTCA") for the same underlying behavior. (SAC 22–26). Within that claim, Plaintiff also sues Dr. Wu, Dr. Javors, and Director Pearson in their individual capacities for money damages pursuant to *Bivens*. (SAC 25–26); *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff additionally seeks immediate assignment to

community care or $7,500,000 in a medical trust until his death, a second opinion, an answer to Plaintiff's concerns, $2,000 for his pain and suffering, the relevant Parties' California State Medical Board license numbers, $50,000,000 in trust for other alleged victims, and fees and costs. (SAC 26–27).

## II. LEGAL STANDARD

Under 28 U.S.C. § 1915(e)(2), the Court must screen an *IFP* complaint and dismiss the case if, at any time, it determines that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (confirming § 1915(e)(2)(B) applies to non-prisoners as well). A complaint "is frivolous where it lacks an arguable basis either in law or in fact" and malicious where "it was filed with the intention or desire to harm another." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (citation modified). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Accordingly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Finally, dismissal is warranted when the plaintiff seeks monetary relief against an immune defendant, as long as the court "has sufficient information to make a determination on immunity." *Chavez v. Robinson*, 817 F.3d 1162, 1167 (9th Cir. 2016).

## III. DISCUSSION

The Court now examines the SAC to determine whether it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant with immunity from such relief.

As a preliminary matter, the Court's January 20, 2026 Order granted leave only as to the ADA claim. (ECF No. 10 at 5). Plaintiff has exceeded that grant by adding President Donald J. Trump as a Defendant, reasserting reliance on the Older Americans Act, and asserting a new cause of action under the FTCA. (SAC 1, 5–7, 25–26). However, there are no new claims alleged against the added Defendant and no new causes of action are asserted under the Older Americans Act. Furthermore, the Court notes that Plaintiff's FTCA claim was not actionable until after the filing of the First Amended Complaint on August 6, 2025. (*See* SAC 18 (stating that the claim was filed on March 12, 2025); ECF No. 7); 28 U.S.C. § 2675 (requiring a claim to be denied by an agency before suit may be filed and allowing a claim pending for longer than six months to be considered a denial). Therefore, the Court screens the SAC in its entirety.

### A. ADA Claim

Plaintiff's first cause of action alleges disability discrimination in violation of the ADA. "To prove that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (citation modified). Although Plaintiff has plausibly alleged that he is a qualified individual with a disability, he cannot meet the other requirements. (ECF No. 10 at 4). This is because Title II of the ADA only applies to a "public entity" which is defined as "any State or local government," "any department, agency, special purpose district, or other instrumentality of a State or States or local government," or a commuter authority. 42 U.S.C. § 12131(1). The VA is an agency

of the federal government and thus not a public entity within the meaning of Title II. *Cf. Drevaleva v. Dep't of Veterans Affs.*, 835 F. App'x 221, 223 (9th Cir. 2020) ("[T]he federal government is excluded from the coverage of the ADA."). Accordingly, Plaintiff's ADA claim is dismissed without leave to amend as it is absolutely clear the deficiency could not be cured by amendment. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

**B. FTCA and *Bivens* Claims**

Plaintiff's second cause of action seeks monetary compensation under the FTCA for injuries allegedly caused by VA employees acting within the scope of their employment, and further seeks to hold Dr. Wu, Dr. Javors, and Director Pearson personally liable under *Bivens*. (SAC 25–26); 28 U.S.C. §§ 1346, 2671–2680; 403 U.S. 388.

"The United States is the only proper defendant in an FTCA action." *Lance v. United States*, 70 F.3d 1093, 1095 (9th Cir. 1995); *see* § 2679(d)(1) (providing a process for the United States to be substituted in as a party if the Attorney General certifies that the defendant employee was acting within the scope of their employment). As such, Plaintiff's FTCA claim is dismissed. Additionally, Plaintiff's interactions with Dr. Javors and any other post-presentment conduct may not be the basis for his FTCA claim. *See* § 2675. Furthermore, FTCA claims may only be brought against the United States "if a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." § 1346(b)(1). Here, Plaintiff's claim was described as "medical malpractice, withholding benefits and the attempted cover-up thereto which caused pain/discomfort, mental anguish, serious bodily injury and lack of faith in the system." (SAC 18). Medical negligence is a cognizable claim in California and may thus be the basis for an FTCA claim. *Flores ex rel. Clark v. United States*, 780 F. App'x 420, 421 (9th Cir. 2019) (discussing an FTCA medical negligence claim and listing the required elements). However, the withholding of veterans' benefits is not a state-law tort. *See* 38 U.S.C. § 511(a) (stripping courts of jurisdiction over the provision of veterans' benefits); *see also Tunac v. United States*, 897 F.3d 1197, 1203 (9th Cir. 2018) (confirming that despite § 511's "expansive scope[,] . . . the FTCA specifically confers jurisdiction on

federal district courts to hear claims involving medical negligence." (citation modified)). Finally, it is unclear what tort Plaintiff might be alleging related to an "attempted cover-up." (SAC 18). In any amended complaint, Plaintiff is not limited by the legal theories specified in his administrative claim because the claim only needed to contain "a general description of the time, place, cause and general nature of the injury and the amount of compensation demanded." *Goodman v. United States*, 298 F.3d 1048, 1055–56 (9th Cir. 2002) ("We do not require the claimant to provide the agency with a preview of his or her lawsuit by reciting every possible theory of recovery or every factual detail that might be relevant." (citation modified)).

To assess Plaintiff's *Bivens* claim, the Court must first look to whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Ziglar v. Abbasi*, 582 U.S. 120, 139–40 (2017) (listing factors to consider). If it is, the Court must look to whether "there are special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 136. Here, Plaintiff asserts that he is suing the three Defendants "for their on-the-job conduct that violated the Constitution." (SAC 25). However, the Supreme Court has only ever extended *Bivens* to Fourth Amendment violations by federal officers, Fifth Amendment employment discrimination, and Eighth Amendment protections for prisoners. *Schwartz v. Miller*, 153 F.4th 918, 926 (9th Cir. 2025); *see Bivens*, 403 U.S. 388; *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). Plaintiff's constitutional claims based on VA healthcare are therefore different in a meaningful way from previous *Bivens* cases. Where a claim arises in a new context, courts "may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." *Egbert v. Boule*, 596 U.S. 482, 493 (2022) (citation modified). Here, Congress has explicitly made the FTCA the exclusive remedy for claims arising from the provision of VA healthcare. 38 U.S.C. § 7316(a) (citing § 1346(b)). Therefore, the Court need not "weigh the costs and benefits of allowing a damages action to proceed" and Plaintiff's claim fails as a matter of law. *Ziglar*, 582 U.S. at 136. Accordingly, Plaintiff's *Bivens*

claim is dismissed.

A court "should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar*, 698 F.3d at 1212 (citation modified); Fed. R. Civ. P. 15(a) (courts should "freely give leave [to amend] when justice so requires"). Although Plaintiff has twice had the opportunity to amend his complaint, his FTCA claim was previously not actionable and thus raised for the first time in his SAC. *See* § 2675. Accordingly, the Court grants Plaintiff leave to amend only as to his FTCA claim.

## IV. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has filed a motion seeking the appointment of counsel "in the interest of justice and to communicate better with the Court." (Counsel Mot. 2). There is no constitutional right to appointment of counsel in a civil case, unless an indigent litigant's physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs. of Durham Cnty.*, 452 U.S. 18, 25 (1981). "However, a court may under 'exceptional circumstances' appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1)." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). "When determining whether exceptional circumstances exist, a court must consider the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Id.* (citation modified). Here, neither consideration supports appointment at this time. Plaintiff's SAC has been dismissed with limited leave to amend and thus a likelihood of success on the merits cannot presently be assessed. Furthermore, Plaintiff's SAC does not evidence an inability to articulate claims on the legal issues involved. For those reasons, Plaintiff's Motion for Appointment of Counsel is denied without prejudice.

## V. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff's Second Amended Complaint does not survive § 1915(e)(2) screening. The SAC is **DISMISSED** and Plaintiff's Motion for Appointment of Counsel is **DENIED** without prejudice. Plaintiff may file a Third Amended Complaint within twenty-one days of this Order asserting an FTCA claim against the United States

but not otherwise adding any new claims or parties. If Plaintiff does not file an amended complaint within that time, the Clerk of Court is instructed to close this case.

**IT IS SO ORDERED.**

Dated: August 24, 2026

Hon. Dana M. Sabraw
United States District Judge